IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, | : | Bankr. Case No. 17-12560-BLS |
| LLC, *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| _____ | : | |
| ALAN R. BRILL, | : | |
| | : | |
| Appellant, | : | |
| v. | : | Civ. No. 19-502-LPS |
| | : | |
| WOODBRIDGE LIQUIDATION TRUST, | : | |
| | : | |
| Appellee. | : | |

**MEMORANDUM**

**I.   INTRODUCTION**

Pending before the Court is an appeal (D.I. 1) by *pro se* appellant Alan R. Brill ("Brill") from the Bankruptcy Court's Memorandum, *In re Woodbridge Group of Companies*, *LLC,* 2019 WL 647033 (Bankr. D. Del. Feb. 14, 2018), and related *Order Sustaining Debtors' Objection to Proofs of Claim Filed by ERC I, LLC and Alan R. Brill* (B.D.I. 3403) (ER:0494-95)[1] (together, the "Decision"), issued by the Honorable Kevin J. Carey[2] in the above-captioned chapter 11 cases. The Decision sustained the Debtors' objection (B.D.I. 2213) to proofs of claim filed by Brill on behalf of himself and ERC I, LLC ("ERC"). The Bankruptcy Court disallowed Brill's claims on the ground that they are the same as claims that had previously been litigated to final

---

[1] The docket of the Chapter 11 cases, captioned *In re Woodbridge Group of Companies, LLC, et al.,* Case No. 17-12560-BLS (Bankr. D. Del.), is cited herein at "B.D.I. __." Appellee's appendix (D.I. 21) filed in support of its answering brief (D.I. 20) is cited herein as "ER:__."

[2] By Order dated April 11, 2019 (B.D.I. 3589), these chapter 11 cases were reassigned to the Honorable Brendan L. Shannon.

judgment in Indiana state court, are therefore barred by *res judicata*, and hence are not allowable under 11 U.S.C. § 502(b)(1).[3] For the reasons that follow, the Court will affirm the Decision.

## II. BACKGROUND

### A. Prepetition Litigation

The first of the Debtors entered bankruptcy on December 4, 2017, and were joined by additional Debtors in the months that followed. Among the Debtors were Whiteacre Funding, LLC ("Whiteacre") and Woodbridge Mortgage Investment Fund 2, LLC ("Fund 2"). On October 26, 2018, the Debtors confirmed their Plan of Liquidation ("Plan"). (B.D.I. 2903) Pursuant to the Plan, the Woodbridge Liquidation Trust ("Liquidation Trust") became responsible for matters relating to claims such as those at issue in this appeal and, accordingly, was substituted as appellee in this case. (*See* D.I. 7)

Certain of the Debtors had an extensive history of prepetition litigation with ERC and Brill in Indiana state court, including through the state court appellate process, yielding a final judgment. In April 2014, Debtor Whiteacre commenced a foreclosure action against ERC and other parties to foreclose on a mortgage encumbering certain real property in Evansville, Indiana (the "State Court Action"): Case Number 82D03-1404-MF-01437 in the Vanderburgh Superior

---

[3] Pursuant to Bankruptcy Code section 502(b)(1), a party may object to a claim on the grounds that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). "Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987). When a proof of claim is based on a cause of action that would be barred by principles of *res judicata*, that claim is unenforceable under applicable nonbankruptcy law and should be disallowed. *See, e.g.*, *In re Residential Capital, LLC*, 2016 WL 4487635, *7 (Bankr. S.D.N.Y. Aug. 25, 2016) (disallowing proof of claim based on alleged lending misconduct by debtors because underlying causes of action had been resolved against claimant in other litigation).

Court (the "Indiana Trial Court").  *See generally Findings of Fact, Conclusions of Law, and Order for Entry of Final Judgment* (ER:0024-90) (the "Trial Decision").

While ERC did not challenge the default under the note, the debt owed, or the validity of loan documents, it raised a number of affirmative defenses, counterclaims, and third-party claims against Debtor Whiteacre, non-debtor Riverdale Funding, LLC, and Debtor Fund 2, including claims for breach of contract, bad faith, promissory estoppel, fraud, unjust enrichment, tortious interference with business relations, civil conspiracy, estoppel, unclean hands, waiver, and generalized illegality.  The Indiana Trial Court held a four-day trial at which the court heard testimony from five witnesses and admitted hundreds of exhibits.  (*See* ER:0026, Trial Decision at 2)  Brill actively participated in the trial; he testified and was the key witness associated with many of the trial exhibits.  (ER:0027-28, 0038-44 & 0056–82 at ¶¶ 2-3, 14-20 & 32-58)

Subsequently, the Indiana Trial Court issued a 64-page Trial Decision, rejecting all of ERC's and Brill's theories.  "[T]he Woodbridge Parties prevailed on all claims," including the array of affirmative defenses and counterclaims.  (ER:0026)  The Indiana Trial Court entered final judgment in favor of all counterclaim defendants and allowed Whiteacre to foreclose its lien on ERC's property.  (ER:0087–88 at ¶¶ 185-90)

ERC then appealed to the Court of Appeals of Indiana (the "Indiana Appellate Court").  The Indiana Appellate Court affirmed the judgment of the Indiana Trial Court in a Memorandum Decision.  (ER:0091-0114)  "On appeal, ERC challenge[d] only the trial court's rejection of its affirmative defenses and, thus, abandon[ed] all independent claims filed against the Woodbridge Parties."  (ER:0093 at ¶ [2], ER:0093)  The Indiana Appellate Court engaged in a detailed analysis of those affirmative defenses and concluded that "the trial court's rejection of the affirmative defenses was not clearly erroneous."  (ER:0114 at ¶ [53])

3

ERC sought further review by filing a petition to transfer jurisdiction to the Indiana Supreme Court, which was denied on August 15, 2017. (ER:0115-16) Once ERC failed to timely seek further review from the United States Supreme Court, the Indiana Supreme Court's denial of the petition to transfer terminated the litigation between the parties. *See* Indiana Rule of Appellate Procedure 58(B). The mortgaged property was thereafter sold at a sheriff's sale on November 30, 2017. (ER:0117–0118)

### B.   Proofs of Claim

On June 19, 2018, Brill filed four proofs of claim in the Bankruptcy Case: two on his own behalf against Whiteacre and Fund 2, and two on behalf of ERC also against Whiteacre and Fund 2 (collectively, the "ERC/Brill Claims"). (ER:0515-1213) The four claims are substantially similar as each: (i) asserts the same purported $3,000,000 unsecured claim, (ii) notes that the claims of ERC and Brill are "similar" and asserted "[c]oncurrently," (iii) describes the basis of the claims as "Real estate stolen in fraudulent financing scam, plus legal fees/lost income/expenses/deterioration," and (iv) attaches narrative notes for the "Common/Related Claims," including a grid listing the four asserted and overlapping claims. (*Id.*)

On July 20, 2018, the Debtors filed an objection (the "Claim Objection") to the ERC/Brill Claims. (ER:0004-20) The Debtors asserted, *inter alia*, that the putative claims asserted in the ERC/Brill Claims already were – or at minimum could have been – litigated to final judgment in a prepetition foreclosure action involving the very same real property and loan obligations at the heart of the ERC/Brill Claims and, thus, were barred based on *res judicata*. Brill filed his response to the Claim Objection on August 7, 2018 (ER:0119-0407) ("Brill Response").

On August 21, 2018, the Bankruptcy Court heard oral argument on the Claim Objection. At the hearing, the Bankruptcy Court noted that ERC is a legal entity and, therefore, could not appear in court without counsel. (8/21/18 Hr'g Tr. at 18:16-19:6, ER:0447-48) Brill then

4

acknowledged that "the four claims were essentially similar against different stages of the transaction" and, immediately thereafter, Brill unilaterally withdrew the claims filed on behalf of ERC. (*See id.* at 19:7–20:5, ER:0448-49) After hearing argument from counsel for the Debtors and from Brill, the Bankruptcy Court took the matter under advisement. (*See id.* at 20:9–36:24, ER:0449-65)

On February 14, 2019, the Bankruptcy Court entered its Order, disallowing and expunging Brill's claims. The Bankruptcy Court's reasoning, including its findings of fact and conclusions of law, was set forth in a memorandum decision (the "Memorandum" or "Mem."). (ER:0488-93) In essence, the Bankruptcy Court concluded that "Brill has had his day in court" (ER:0492) and, hence, his claims were barred by *res judicata*.

### C. Procedural History of Appeal

On March 13, 2019 – nearly two weeks after the 14-day deadline of Bankruptcy Rule 8002(a)(1) – Brill filed a notice of appeal. (ER:0496-510) Brill requested that the Bankruptcy Court excuse his late filing due to his poor health, and the Debtors did not oppose. (ER:0513-14) Pursuant to Bankruptcy Rule 8002(d)(1), Brill's notice of appeal was deemed timely filed.

Initially, Brill's opening brief was to be due on July 29, 2019. (D.I. 14) Due to his continuing poor health and related hospitalization, the Liquidation Trust and the Court agreed to several extensions. (*See* D.I. 15, 16, 17 & 18) Brill finally filed his opening brief on February 4, 2020. (D.I. 19) On February 28, 2020, the Liquidation Trust filed its answering brief and appendix. (D.I. 20, 21) Brill did not file a reply brief.[4]

---

[4] On April 2, 2020 Brill filed a motion to extend the deadline so that he might file his reply by April 7, 2020 (D.I. 22) ("Motion to Extend"). As of May 27, 2020, no reply has been received by the Court; nor has there been a request for a further extension. Accordingly, the Motion to Extend will be denied.

5

The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

### III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C § 158(a)(1). The Order disallowing Brill's claim is a final order. In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

The application of *res judicata* to undisputed facts is generally a legal issue reviewed *de novo*, but "whether a party is in privity with another for preclusion purposes is a question of fact that is reviewed for clear error." *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1287 (11th Cir. 2004); *see also, e.g.*, *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir. 1968) (explaining that "determination of identity between litigants for the purpose of establishing privity is a factual question, and the District Court should not be reversed unless its determination is clearly erroneous").

### IV. DISCUSSION

The Bankruptcy Court concluded that Brill's claims are the same as the previously-litigated ERC claims and are barred by *res judicata*. *See Woodbridge*, 2019 WL 647033 at *2. Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction. When a proof of claim is based on a cause of action that would be barred

6

by principles of *res judicata*, that claim is unenforceable under applicable nonbankruptcy law and should be disallowed. *See, e.g.*, *Residential Capital,* 2016 WL 4487635, at *7 (proof of claim based on wrongful foreclosure action was disallowed due to preclusion by previous state court final judgment).

As the Bankruptcy Court explained, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which [may be] collectively referred to as 'res judicata.'" *Woodbridge,* 2019 WL 647033, at *2 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (internal quotation marks omitted). " 'The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the Full Faith and Credit Statute.' " *Id*. (quoting *Secretary United States Department of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017)). As the Bankruptcy Court observed, federal courts must look to state law to examine the preclusive effect of a previous judgment. *See id*. (citing *Kwasny*, 853 F.3d at 94). Accordingly, the Bankruptcy Court applied Indiana state law to determine whether *res judicata* applies in this case. *See id.* at *2-3.

Under Indiana law, in order for the doctrine of *res judicata* to bar litigation of a claim, "1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies." *Marsh v. Rodgers (In re Rodgers)*, 659 N.E.2d 171, 173 (Ind. Ct. App. 1995). The Bankruptcy Court applied these elements. *See Woodbridge,* 2019 WL 647033 at *2. Brill does not dispute the applicable standard but asserts that the Bankruptcy Court erred in applying the third and fourth elements. (*See* D.I. 19 at 23-24) The Liquidation Trust responds that only one of the applicable elements (number four, privity) is disputed. (*See* D.I. 20 at 9)

Regarding the first element, the Bankruptcy Court concluded "it is undisputed that the judgment was rendered by a court of competent jurisdiction" because the state-court "foreclosure action was brought in the jurisdiction where the real property was located, which was proper." *Woodbridge*, 2019 WL 647033 at *2. The Indiana Trial Court was a court of competent jurisdiction for a foreclosure action regarding real property located in Vanderburgh County; it exercised jurisdiction over counterclaims and third-party claims that ERC and Brill put at issue in that action. (ER:0026) Brill does not challenge this finding. (*See* D.I. 19 at 22)

Regarding the second element, the Bankruptcy Court concluded that the state court "judgment was rendered on the merits" because "[t]he trial court presented findings based on facts, and those findings of facts and conclusions of law were affirmed on appeal." *Woodbridge*, 2019 WL 647033 at *2. The thorough Trial Decision was rendered after a multi-day trial during which the Indiana Trial Court received evidence and heard argument. Brill does not challenge this finding. (*See* D.I. 19 at 22)

Regarding the third element, the Bankruptcy Court concluded that "the matter in issue was, or could have been, determined in the prior state court action." *Woodbridge*, 2019 WL 647033 at *2. In support of this conclusion, the Bankruptcy Court explained:

> The ERC claims were litigated in state court. Brill did not assert claims on his own behalf in state court but chose instead to litigate those issues through ERC. Although assigned different claim numbers, the ERC/Brill claims are the same; and thus, the claims filed in bankruptcy court are the same as those previously litigated in Indiana state court.

*Id*. Brill argues that his disallowed claims were filed "on his own behalf for damages incurred by action of FUND 2 and its controlling persons," "were not determined in the prior actions," and "would not be litigated on his behalf through ERC; they were direct with respect to his person." (D.I. 19 at 22)

8

The Bankruptcy Court's conclusion that the third element is satisfied is supported by the record. Substantial materials are attached to the ERC/Brill Claims. While some of the details of the claims are somewhat difficult to discern, it is evident that they are all based on the same alleged misconduct that was already tried as part of the State Court Action.

For example, the "Very Summarized Case Description" (ER:0529) describes the same "fraud, misrepresentation, conspiracy, etc." that is addressed in detail in the Trial Decision and the Indiana Appellate Court's Memorandum Decision. The attached materials further reference the original foreclosure complaint (*see, e.g.*, Brill email of April 8, 2014, ER:0557-58), include an *Affidavit of Tony Coffman* bearing the caption of the State Court Action (ER:0596-98), and provide a detailed chart entitled "Analysis of Whiteacre / Riverdale / Woodbridge2 responses to ERC Complaint" that appears to pertain to issues raised as part of the State Court Action. (ER:0667-79)

The issues underlying the ERC/Brill Claims either were among the many theories that were asserted and litigated to finality in the State Court Action or derive from the same common nucleus of operative facts and, thus, easily could have been pursued in the State Court Action. Case law makes clear that any additional theories that even potentially ***could have been*** raised against Whiteacre or the other Woodbridge entities in the State Court Action are now barred. *See, e.g.*, *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008) ("The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought."); *Barker v. State*, 191 N.E.2d 9, 11 (Ind. 1963) ("[I]t is a well settled principle of law in this jurisdiction that all issues properly before a court which could have been determined or were determined are considered finally adjudicated and all parties thereto are bound thereby. The principle of *res judicata* does not permit the repeated litigation of matters settled by a final judgment."); *Olds v. Hitzemann*, 42 N.E.2d 35, 38 (Ind. 1942) ("It is

9

firmly settled that *res judicata* embraces not only what was actually determined, but every matter which the parties might have litigated in the cause."). The Bankruptcy Court's conclusion that "the matter in issue was, or could have been, determined in the prior state court action" is consistent with Indiana law. *Woodbridge*, 2019 WL 647033 at *2.

Turning to the fourth element – which the Bankruptcy Court described as the only "issue of true contention" – the Bankruptcy Court summarized Indiana law and its own factual findings:

> The term privity describes interests that connect persons so that one might not be party to an action but still be bound by it. An entity need not control a prior action for privity to exist. For the purpose of *res judicata*, the court looks beyond the nominal parties and treats those whose interests are involved as the real parties. Brill is undoubtedly in privity with ERC. Brill is the chief executive of ERC. Brill participated in the Indiana state court litigation on behalf of ERC and testified at length throughout the proceedings. Brill acted on behalf of ERC in executing the loan documents with Riverdale. While Brill states that he does not have voting control of ERC, it is clear that he has practical control and, further, that he considers himself able to act with authority on behalf of ERC in the prepetition loan proceedings and throughout the state court litigation, as well as in this bankruptcy case. For these reasons, Brill is in privity with ERC.

*Woodbridge*, 2019 WL 647033 at * 2.

As already noted, the record includes ample evidence supporting the Bankruptcy Court's determination of the relationship between Brill and ERC.[5] The Bankruptcy Court's finding of privity was not clearly erroneous.

---

[5] *See, e.g.*, ER:0027 (Trial Decision) ("ERC is controlled by Alan Brill."); ER:0094 (Indiana Appellate Court Memorandum Decision) ("Alan Brill, a sophisticated businessman with years of commercial real estate experience, controls ERC."); ER:0125 (Brill Response) (referring to "ERC I, LLC ('ERC') of which [Brill] is the 99.9 % equity owner"); ER:0128 (Brill Response) ("The claims are not claims in four separate amounts but are essentially the same single claim brought by Alan Brill against all of the Woodbridge Debtors and the controlling parties . . . ."); *id*. ("Brill owns and controls ERC I, LLC ('ERC') through other of his investment companies and operates it through other of his management Companies."); *id*. at ER:0128-29 ("The loan funded to ERC in the amount of the Old Mortgage purchase price . . . would be for the benefit of Alan Brill to take the Old Mortgage in his name, while leaving it as collateral placed by him in

Brill's arguments against the Bankruptcy Court's well-supported finding of privity are at times difficult to decipher, but in any event are unavailing. Brill argues at length that the Bankruptcy Court erred in finding privity because Brill did not have control over ERC or the capacity to assert his own claims in the Indiana litigation, as he was merely acting as ERC's agent or representative in that litigation. (*See* D.I. 19 at 7, 23-26) Brill attempts to draw a distinction between "'two Brills (Person Brill individually and personally; and alternatively Agent Brill . . . on behalf of the claiming entity ERC)." (*Id.* at 10) According to the Litigation Trust, this an overly-technical exercise, as the doctrine of *res judicata* looks to the underlying substance of the relationship between two parties, not mere forms, and the Bankruptcy Court properly concluded that the relationship between Brill and ERC is intimately connected in many respects. (*See* D.I. 20 at 23)

The Court agrees with the Litigation Trust. The Indiana Supreme Court has held that "a 'privy' is one . . . whose interests are represented by a party to the action." *Becker v. State of Indiana*, 992 N.E.2d 697, 700-01 (Ind. 2013) (internal quotation marks omitted). "[A]n entity does not have to control a prior action . . . for privity to exist." *Id.* Privity "includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action." *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ct. App. Ind. 2000) (internal citation omitted). Representation of interests is established when an individual stands to benefit financially from a favorable outcome. *See id.* Hence, while control can establish privity, it is not a necessary condition, and representation of interests may also be sufficient to establish privity.

---

the collateral package for Lender to ERC."); ER:0448-49 (8/21/18 Hr'g Tr. at 19:25-20:2) ("[Brill:] I'm bringing the case against on behalf of the damages to me personally brought on me by Fund II and other parties."); ER:0449 (*id*. at 20:3-5) ("[Judge Carey:] Okay. So, are you withdrawing claims number 9407 and 9423 which were filed on behalf of ERC? [Brill:] Yes."); ER:0461 (*id*. at 32:19-21) ("[Brill:] . . . [T]he whole point of the financing was for me – for ERC to get money to extend to May to buyback the existing mortgage . . . ."))

According to the Liquidation Trust, Brill's argument that he had "no authority" over ERC, which was an "independent entity" (D.I. 19 at 23-24), would (even assuming it is well-founded) only implicate control and is irrelevant to representation of interests. The Court agrees. Under Indiana law, Brill is bound by *res judicata* because ERC represented Brill's interests, and his words demonstrate that he had a financial interest in a favorable outcome.

The record establishes that Brill controlled ERC,[6] owned 99.9% of ERC,[7] acted on behalf of ERC in several different ways (including by filing and subsequently unilaterally dismissing proofs of claim on its behalf),[8] and referred to ERC's interests and his own interests interchangeably.[9] ERC's financial interests were Brill's financial interests, as evidenced by his concern about personal tax liability for debt forgiveness income.[10] Indeed, as the Liquidation Trust points out, the fact that Brill is asserting a personal claim against Fund 2 relating to the underlying transaction establishes that he had a financial interest in the outcome of the

---

[6] *See, e.g.*, Brill Response at 4 (p. 10 of the PDF), ER:0128 ("Brill owns and controls ERC . . . ."); Trial Decision at 3, ER:0027 ("ERC is controlled by Alan Brill . . . .").

[7] *See* ER:0125 (Brill Response at 1) ("ERC I, LLC ('ERC') of which [Brill] is the 99.9% equity owner . . . .").

[8] *See* ER:0449 (8/21/18 H'rg Tr. at 20:3-5) ("[Judge Carey:] Okay. So, are you withdrawing claims number 9407 and 9423 which were filed on behalf of ERC? [Brill:] Yes.").

[9] *See, e.g.*, ER:0461 (8/21/18 H'rg Tr. at 32:19-21) ("[T]he whole point of the financing was for me – for ERC to get money to extend to May to buyback the existing mortgage . . . ."); *id.* at ER:0461 (32:24) ("The benefit, to me, to the whole structure . . . ."); ER:0128-29 (Brill Response at 4-5) ("The loan funded to ERC in the amount of the Old Mortgage purchase price . . . would be for the benefit of Alan Brill to take the Old Mortgage in his name, while leaving it as collateral placed by him in the collateral package for Lender to ERC.").

[10] *See* ER:0462 (8/21/18 H'rg Tr. at 33:15-20) ("So . . . this old mortgage that I was protecting with my life for the benefits of property that was worth many times what that mortgage was in this distressed – what could be bought for – the problem was if it were paid off I was going to have millions of dollars of forgiveness income that was taxable to me, which I wanted to avoid.").

foreclosure action. (*See* ER:0448-49 (8/21/18 Hr'g Tr. at 19:25–20:2) ("I'm bringing the case against on behalf of the damages to me personally brought on me by Fund II and other parties."). Brill's brief in this case reinforces this conclusion.[11] The record demonstrates that ERC represented Brill's interests in the Indiana foreclosure action, regardless of Brill's own participation or control. Thus, there was privity between Brill and ERC.

Brill further asserts that the Bankruptcy Court was wrong to conclude that he was in privity with ERC because Brill does not (in any capacity) control ERC. Brill's opening brief states that an (unnamed) trustee of the "Trust for Brill Children" is the ultimate indirect majority owner of ERC. (*See* D.I. 19 at 23 & 25) Even if true, as the Liquidating Trust correctly points out, the fact that a trust settled by Brill for the benefit of his issue formally controls ERC in no way undermines the conclusion that Brill effectively controls ERC, as Brill himself has repeatedly asserted. Moreover, as discussed above, the Bankruptcy Court had two bases upon which to rest its privity determination – a finding of control and of representation – each of which, standing alone, was sufficient to establish privity.

Brill's other arguments appear to recast his capacity argument in the context of discussing the facts and merits of the underlying litigation in the State Court Action. In this

---

[11] *See, e.g.*, D.I. 19 at 12 ("The reason for the structure by which the ERC New Mortgage Loan was to be effected separately from the transaction of Person Brill buying the Old Mortgage was essentially financially tax-wise planned because for ERC to acquire the Old Mortgage or pay it off itself at a great gain would have triggered up to several million dollars in 'debt-forgiveness' taxable income under the IRS Code. That tax liability, if effected, would have flowed through to Person Brill. This structure was to enable Person Brill to manage that tax situation over the longer term in a manner by which it would not have tax cash payment demand implications on Person Brill nor on ERC."); *id.* at 18-19 ("ERC could not anyway have claimed if Person Brill had not first been damaged . . . ."); *id.* at 24 ("It was also critically important to Brill that the Old Mortgage not be paid off by ERC nor acquired by ERC at such a grossly discounted payoff. If obtained or paid off by ERC at a price less than the balance owed, that difference would be deemed debt forgiveness income with immediate tax liability arising to ERC in the amount of upward to several million dollars. Given the tax structure of the entities, that resulting tax liability would fall/pass to Brill personally . . . .").

regard, Brill contends that "the damages incurred were against him personally and not ERC," that "the contract with Woodbridge Parties was clearly defined for the acquisition by Person Brill (only), specifically not by ERC, of the Old Mortgage," that "Person Brill [had] the exclusive and sole right to acquire the Old Mortgage from the then holder," and that such prior holder "specifically required that the transfer be executed on behalf of Person Brill's personal authority." (D.I. 19 at 11)  None of these contentions points to any error in the Bankruptcy Court's finding that Brill and ERC were privies for purposes of *res judicata*.

Finally, Brill appears to fault the Bankruptcy Court for disallowing the Brill claims without dealing with the substance of the issues he presented. (*See* D.I. 19 at 9)  As the Liquidation Trust correctly points out, this result follows from application of *res judicata*, as the purpose of the doctrine is to "bar[] the relitigation of a claim after a final judgment has been rendered." *Rogers*, 659 N.E. 2d at 172.  Here, the merits of the underlying claims were litigated in the Indiana state courts.  The Bankruptcy Court correctly held that, having already had his day in court, Brill could not again relitigate those claims.

## V.  CONCLUSION

The Bankruptcy Court correctly interpreted and applied Indiana's *res judicata* law.  The claims Brill filed in the bankruptcy case are the same that ERC fully litigated and lost in state court, and the Court finds no error in the Bankruptcy Court's conclusion that Brill and ERC are in privity.  Brill's arguments do not undermine the Bankruptcy Court's careful analysis of the law or its application of the law to the facts.  For the foregoing reasons, the Decision will be affirmed.  An appropriate Order follows.

May 27, 2020  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT